Milton Alpert, J.
This is a claim for the appropriation of claimants’ land pursuant to section 30 of the Highway Law, which proceeding is described as Ulster-Delaware, Part I, S.H. No. 16, Ulster County, Map No. 72, Parcel No. 93.
The aforesaid map and description were filed in the office of the County Clerk of Ulster County on October 19, 1965.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on February 2-, 1967 and has not been assigned or submitted to any other court or tribunal for audit or determination.
*1091 The court adopts the description of the appropriated property as shown on the map and description filed in the Ulster County Clerk’s office, a copy of which is attached to the claim and same is incorporated herein by reference.
Claimants were the owners of the property by reason of two deeds, the first dated June 27, 1946 from Edward Hudler and Mabel E. Hudler, grantors, to Edgar Hudler and Olive H. Hudler, grantees, recorded in the Ulster County Clerk’s office on the 6th day of July, 1946, in Liber 668 of Deeds, at Page 513; and, the second dated June 15, 1963 from Mabel E. Hudler, grantor, to Edgar Hudler and Olive Hudler, grantees, recorded in the Ulster County Clerk’s office on the 18th day of June, 1963, in Liber 1138 of Deeds, at Page 543.
Before the appropriation, the property consisted of 22.150± acres, located on the east side of Route 28 in the Hamlet of Mount Tremper in the Town of Shandaken in Ulster County. The parcel had 575± feet of frontage on the highway. As it extended eastward from the road, the boundaries widened out so that the rear line of the parcel was 1226± feet in length. On the north, the parcel was 1131± feet deep; and on the south, 1230± feet in depth.
Along the highway before the appropriation, the land, exclusive of a homesite and related surrounding areas including a garden, was generally at grade and remained so for a depth of 500 to 600 feet. There was then an elevation of 15 to 20 feet to a plateau that extended to the rear of the parcel. The land, other than the homesite and related surrounding areas, was basically cleared land with some underbrush, and was used for growing hay.
Located near the highway at the southern end of the parcel was a 0.750± acre homesite which was improved with a one and one-half story frame residence about 19 years old, and a two-car garage. The residence contained a full basement, a living room, dining room, kitchen, half bath and enclosed porch on the first floor, and three bedrooms and a bath on the second floor. It had a coal fired heating system and about 10 years old, a well for water and a septic tank system. Both experts agreed that it was all in good condition and well maintained.
The homesite was also improved with an attractive landscaped lawn, including trees and flowering shrubs and a 10 foot wide gravel drive extending 200 feet to the garage.
The court viewed the property after the completion of the improvement.
The highest and best use of claimants’ property before the appropriation was residential and agricultural, with a poten *1092 tial for residential subdivision and the highest and best use after the appropriation was the same.
The subject proceeding appropriated approximately 0.806± acres of claimants’ property consisting of a rectangular strip of land extending across the entire frontage of claimants’ property. At the northerly end, the strip was 61± feet deep; and at the southerly end it was 71 ± feet deep. No improvements were located within the appropriation, with the exception of a 10 by 71 foot section of the gravel drive and the septic tank system. Also located in the appropriation were a section of lawn and some of the trees and flowering shrubs. As a result of the appropriation, the State’s new right-of-way line came within three feet of the front steps of the dwelling.
Following the appropriation, claimants determined that the residence was too close to the new highway. Accordingly, they chose to move the house to a new homesite instead of demolishing it or using it where it was after providing a new septic system for it. A new homesite was prepared on the remaining land, on a low hill about 100 feet back from its original location. A new septic system was constructed about 100 feet southeast of the new location of the house. Claimant testified that this septic system was above the grade of the house at its original location.
Claimants ’ appraiser testified to a value before the appropriation of $36,500 including $19,500 for the homesite and the residence, $9,000 for the frontage acreage of 5± acres at $1,800 per acre and $8,000 for the 16± acres of rear or agricultural land at $500 per acre. The testimony on behalf of the claimants was to the effect that the cost to cure, or the moving of the house was $14,000, the filling of the low area was $2,200, and the value of the direct ‘ ‘ take ’ ’ was $3,500, being $1,450 for 0.806± acres at $1,800 per acre, $200 for the gravel drive and $1,900 for the lawn, trees and shrubs located within the appropriation. Claimants’ expert testified to an after value of $16,800 with total damages, as enumerated above, of $19,700.
The State’s appraiser testified to a before value of $1,300 per acre for the 21.15± acres or $27,500 rounded. To this he added $15,500 for the value of the residence and the one acre homesite, giving- a total of $43,000. As a result of the appropriation, the State’s appraiser found an after value of $34,700 was a resulting damage of $8,300. Of this damage, $1,100 represented the direct damage for the appropriation of 0.806± acres at $1,300 per acre, $500 for the landscaping and trees, and $400 for the septic tank system. He then attributed a con *1093 sequential damage to the remainder of the homesite and building improvements thereon of $6,300 due to the reduction of the setback, proximity to the road and the loss of landscaping. (He stated at page 25 of his appraisal that the homesite and building improvements thereon had an after value of $8,000 — this means that he subtracted from his $15,500 before value $500 for the landscaping and trees taken, $400 for the septic tank system taken, and about $300 for the land directly taken from the homesite.) He did not ascribe any consequential damage to the remainder of the property, other than the homesite and buildings thereon.
The court finds pertinent here the following quotation: ‘1 the party seeking damages is under the duty to make a ‘ reasonable effort ’ to avoid consequences of the act complained of (189 App. Div., supra, p. 424).” (Mayes Co. v. State of New York, 18 N Y 2d 549.)
While the State is responsible to the claimants for the uncured consequential damage or the cost to cure the damage whichever is the lower (see Utica Steam Engine & Boiler Works v. State of New York, Claim No. 42928), it is noted that an acceptable program of cure must be designed to place the claimants in relatively the same position that they were in prior to the appropriation.
After careful consideration of the testimony at the trial, the appraisals and exhibits in evidence, the demeanor of the the witnesses, and the court’s view of the subject property, the court finds as follows:
1. The testimony on behalf of the claimants’ efforts for a program to cure shows that claimants ’ new homesite and their home as moved are considerably improved. At the trial, one of the claimants and their appraiser claimed that $900 had already been deducted because of the better heating system. There, also was testimony concerning what three extra tiers of concrete block would add to the cost of constructing the new cellar.
Claimants’ appraiser’s cost to cure items are set forth on pages 12 and 13 of his appraisal and come to a rounded total of $14,000. The claimant, on the witness stand, testified to a rounded total of $12,500. He omitted items totaling approximately $1,500 that appeared on such pages of the appraisal.
The court has reviewed the claimants’ figures as against the evidence and as against the problem of subtracting betterments from such cost to cure and finds, on a rounded basis, that the following should be subtracted:
*1094 Extra moving to a more favorable location.........$ 300.
Extra height for cellar............................ 250.
Drainage for and waterproofing of foundation...... 400.
Improved heating and domestic hot water facilities including building adjustments and electrical controls .......................................... 1,000.
New entrance door............................... 400.
Top soil and grading of more extensive lawn area... 1,000.
Painting ........................................ 750.
More extensive driveway area in rear.............. 250.
Better septic system.............................. 500.
$4,850.
Because of the probable existence of other items that might be included, the court rounds this to a total of $5,000 for betterments. When this is subtracted from claimants’ $12,500 total, the difference is $7,500 which the court regards as the claimants ’ appropriate cost to cure.
The court at this point adopts the State’s appraiser’s before valuation of $15,500 for the homesite, residence and other buildings and improvements thereon.
The court now returns to the State’s appraiser’s consequential damage of $6,300 to the homesite and buildings and his $400 item for the septic system, which the court has taken into consideration above (claimants’ $900 item for the new septic system less this $400 = $500 betterment above). This totals $6,700.
The court finds that the house at its original location would have needed a more extensive septic system because of the height difference between it and the new location of the septic disposal area and that the State’s appraiser’s after value of the house in its original location should be adjusted downward 10% — by $800 because of this detriment. Thus, the court finds that the after value of the homesite and buildings under the State’s approach should be $7,200 and that, accordingly, the consequential damage for this aspect of the claim should be $7,500. This is checked by the claimants’ cost to cure, as adjusted by the court, of $7,500.
2. The claimants’ appraiser’s valuation of $200 for the driveway area taken is hereby adopted by the court as the fair market value thereof. With respect to the enhancement value of the shrubbery, trees, and front lawn taken, the court finds that the fair market value thereof was $800. The court makes no finding here concerning the septic system taken because it was accounted for above in the court’s consideration of the *1095 damage to the homesite and residence building thereon. The damage items under this paragraph total $1,000.
3. We now come to the valuation of the land directly taken and consequential damage, if any, to the remainder.
At the outset, the court excludes from consideration back acreage which both appraisers agreed was not affected by the State’s taking. For purposes hereof, the court finds the same to have had. the same before and after values.
The fair market value of the homesite land was $1,800 per acre. For the .121 ± acres taken therefrom (15% of the land taken), the court computes the fair market value of the latter to have been $220 rounded.
The before fair market value of the acreage fronting on the highway was $1,300 per acre with an increment of $200 for potential for residential development. For the ,685± acres taken therefrom at $1,500 per acre, the court computes the fair market value thereof to have been $1,030 rounded. The court totals its award for direct taking at $1,250 rounded.
The court finds that there then remained 5± acres of highway frontage land which had a before fair market value of $7,500. The State’s appraiser found no consequential damage to this remaining frontage, whereas the claimants’ appraiser found a $2,200 damage which he expressed in terms of cost to fill. The court finds that because the new highway was raised above the level of this remaining frontage land and because a new drainage ditch was constructed between it and the traveling portion of the new highway, that such frontage land had an after fair market value of $1,100 per acre or a total after value of $5,500. The difference constitutes consequential damage in the amount of $2,000.
4. The Court totals its award as follows:
Land directly taken............................$ 1,250
Improvements directly taken including loss of enhancement value of shrubbery, trees and lawn...................................... 1,000
Consequential damage to homesite and residence building ................-.................. 7,500
Consequential damage to remaining front acreage ....................................... 2,000
$11,750
In view of this decision and the court’s disposition of this claim, the motions made at the trial relating to the appraisals and testimony concerning valuations are hereby denied.
*1096 The claimants are awarded the sum of $11,750 for all damages direct and consequential, with interest thereon from October 19, 1965 to April 19, 1966 and from February 2, 1967 to the date of entry of judgment herein.